WILLIAM WALKER, Plaintiff in Error, v. CHARLES W. WILLIAMS, Defendant in Error.

1. DECREE IN CHANCERY: EFFECT OF.—A decree of the Chancery Court, directing that the legal title to land of the defendant be divested out of him and vested in the complainant, is not, of itself, sufficient to vest the legal title in the complainant; the court must appoint a commissioner to convey, upon failure of the defendant to do so.
2. EQUITY: JURISDICTION.—The test, as to the jurisdiction of a court of equity, is, that the complainant has an equitable title, and if it appear from the face of the bill that the complainant has no title whatever, it seems that the decree of the court in his favor would be void for want of jurisdiction.
3. VENDOR'S LIEN: RIGHTS OF ASSIGNEE.—The assignee of a promissory note given by the vendee of land (who has received a deed,) to secure the payment of the purchase-money, has no lien or equity on the land whatever.
4. EJECTMENT.—If the defendant in ejectment is in possession of the premises, under a contract of purchase from the plaintiff, which has been rescinded, and the purchase-money paid by the defendant refunded, he cannot set up any outstanding title acquired by him against the title of his vendor; nor can he object, in this action, to his want of title.

IN error from the Circuit Court of Tishamingo county. Hon. P. T. Scruggs, judge.

On the 28th of August, 1854, appellee instituted an action of ejectment in the Circuit Court of Tishamingo county, to recover the possession of the south-west quarter of section 20, township No. 3, range No. 8, east, situate in said county.

At the September term, 1854, the defendant appeared and pleaded not guilty.

The bill of exceptions shows, that on the trial the defendant admitted that he was in possession of the premises at the commencement of the suit.

That plaintiff read to the jury a patent from the government to one Hogue, for the land in controversy, and a deed from Hogue to one Thompson, and a deed from Thompson to Susan Bow.

Plaintiff then read a transcript of the record of a suit in chancery, from the Circuit Court of said county, in a case of *Daniel*

*Saffarans* v. *Susan Bow & Aaron Searcy*, from which it appears that Searcy had purchased the land for Susan Bow, his sister, and had given a note to one Daniel Estil, who had assigned it to Saffarans for a part of the purchase-money, to subject the land to the payment of which the bill was filed.

Searcy was served with process, and Susan Bow had regular notice by publication; and a decree *pro confesso* was entered against them.

In September, 1850, a decree was entered in the usual form, directing the land described in the bill to be sold, if the balance of the purchase-money was not paid within a fixed period of time.

The money was not paid, and the land was sold by the commissioner, and *purchased by the appellee.*

It appears that there was a mistake in the description of the land in the bill of complaint and throughout all the subsequent proceedings; it being described as the south-*east* quarter, when it should have been the south-*west* quarter.

The complainant, Saffarans, having discovered the mistake, filed a bill to the March term, 1852, to correct the mistake, &c.; and after Susan Bow had legal notice, by publication, of the pendency of this bill, a decree was, on the 25th of September, 1852, entered, divesting all title out of said Susan Bow, and vesting it in the complainant, Saffarans.

Plaintiff then read a deed from Saffarans to him for the land sued for, and rested his case.

Defendant below then introduced, as proof to show that Susan Bow had intermarried in Tennessee, with E. F. Boren, a transcript from the county court of Henderson county, Tennessee. He also proved by one Scott, that Searcy was in possession of the land from the time of his purchase until his death, and that his son continued in possession until about the time defendant below went into possession.

It appears that the defendant below was then introduced and sworn, and testified at considerable length, after which proof was offered of the contents of a title-bond, of which the defendant, Walker, had spoken in his testimony, which was objected to, and

the objection sustained by the court.   Defendant then read a deed for the land from E. F. Boren and Susan Boren to himself, and rested his defence.   Plaintiff below then proved by Boone, that defendant Walker had purchased the land from Williams, the plaintiff, and went into possession of it; that afterwards it was discovered that a mistake had been made in the description of the land, and the contract was by agreement cancelled: that defendant knew that plaintiff had purchased the land, and that a bill was filed to correct the mistake.

The jury found a verdict for the plaintiff below, and judgment was rendered accordingly.

Defendant moved for a new trial, which was denied, and he excepted, &c.

*Reynolds* and *Kinyon*, for plaintiff in error.

In the last case under which Saffarans claimed title, and through which Williams derived his title, there is not the shadow of a *pretence* that Saffarans ever had any title to the land in controversy, or any land whatever; and *it is further to be remarked*, that the *note* which he asserted was a lien on *the land*, had been previously satisfied by a sale of the south-east quarter of section 20, to Williams.   Now admitting for a moment, for the sake of argument, that if Saffarans had title to the land, or was the real owner, he could under the act of 1841, come in to remove clouds,—yet is it not apparent, that the party who does so, must allege the equitable title to be in himself; and that unless he does so, the *decree*, when *made* under a publication and without *actual notice*, is absolutely void?

Saffarans did not assert any title whatever, legal or equitable, in his bill; *but because* in a previous bill to enforce a vendor's lien, in which he had obtained the sale of land, and satisfaction of his debt, there had been a mistake in the land, and he had obtained the sale of the wrong land, (he not being the purchaser,) he asks the court to take Susan Bow's land and give it to him. The proceeding is attempted to be upheld under the act of 1841, and is, in my opinion, a burlesque on legal proceedings.   Hutch. Code, 773.

But even admit the decree was a *valid one:* no legal title was ever vested under it, so as to maintain an action of ejectment.

Saffarans was to have execution of the decree, but no execution was ever taken: and if it had, unquestionably Mrs. Bow could have suspended it, by showing that Saffaran's debt was paid, or by paying it. How does the Chancery Court vest a party with the legal title? It cannot do so by a mere decree: it can only act by a *commissioner*, whom it shall appoint to convey the legal title, or by forcing the party holding the legal title to convey it.

There being no mode pointed out in the statutes for transferring the legal title, it must be done in the mode pursued in the Chancery Court of England, by operating on the party himself, and forcing him by process of contempt or sequestration to convey, or by appointing a commissioner to do so.

But in reference to the first record introduced by the plaintiff, which was the foundation of his whole title, the proceedings therein were *null and void*, because there was no service of process on Mrs. Bow, and no *affidavit* of *her* non-residence. Hutch. Code, 764.

It will also be seen, that in each of the two records the proceedings against Mrs. Bow were void, because there was no such *proof of publication* as the statute requires:—there being *no* copy of the notice certified by the proprietor or printer of the paper; and besides, the publication in each case was not for the time required by the order of the court. Hutch. Code, 866.

Lastly, the title of the plaintiff below, was clearly *champertous*. *Ellis* v. *Turner*, 11 S. & M. 422; *Reynolds* v. *Ingersoll*, Ib. 249; *Sessions* v. *Reynolds*, 7 Ib. 130.

*Miller* and *Kilpatrick*, for defendant in error.

The plaintiff below proved a good title from the United States government down to Susan Bow.

The record of the chancery case shows, that the land in controversy was intended to be subjected, in the possession of Searcy and Susan Bow, for the payment of a portion of the purchase-money, but that a mistake was made in the description of the land.

The amended bill was filed to correct the mistake.

The decree under the amended bill, divested the title out of Susan Bow, and vested it in Saffarans.

Saffarans then conveyed to the plaintiff below.

The chain of plaintiff's title was thus shown to be complete.

The proceedings in the chancery case, seem to have been somewhat irregular; but the court had jurisdiction both of the parties and of the subject-matter.

The decree was not void; and it cannot be attacked collaterally for irregularity merely. *Barringer* v. *Boyd*, 27 Miss. R. 473; *Peck* v. *Woodbridge*, 3 Day, R. 36.

The proof offered by defendant below, to show that Susan Bow had intermarried with Boren, pending the chancery cause, was properly rejected by the court.

The proof was clearly incompetent under the issue, and irrelevant.

It did not tend to show that the decree was void.

The deed from Boren and wife to the appellant was incompetent, or if competent, was entitled to no weight; for whatever title Susan Boren may have had, was divested before the date of the deed.

The pretended purchase by Walker, the appellee, from Boren and wife, was void for *champerty*.

The proof shows that Walker was put into possession by Williams, the appellant, under a contract of purchase, and that Walker had full knowledge of the claim of Williams, to the land in dispute.

Walker was in possession under Williams and as his tenant, at the time he took the deed from Boren and wife.

The charges asked of the court appear to have been all given.

FISHER, J., delivered the opinion of the court.

The plaintiff below brought this action in the Circuit Court of Tishamingo county, to recover a tract of land in the possession of the defendant.

The plaintiff appears to have proved a regular chain of title from the government, to one Susan Bow, through whom he claims title.

The point for investigation is, whether he has acquired her title. For the purpose of establishing this fact, certain records were introduced, from the chancery side of the Circuit Court of said county, by one of which it appears, that one Daniel Saffarans filed a bill in said court, alleging that the south-east quarter of a certain section of land, constituted the consideration for the note described in the bill, and praying that the land might be subjected to what was supposed to be the vendor's lien, &c. After publication under the statute, Susan Bow, being a non-resident of the state, a decree was made according to the prayer of the bill, and a commissioner appointed, who sold the land, and made a deed to the plaintiff. It being afterwards discovered that it was the south-west quarter of the same section, instead of the south-east quarter, as described in the bill, which constituted the consideration of the note, Daniel Saffarans filed another bill, the purport and object of which, it is difficult to determine from the record. We conjecture, however, from the decree, that the bill was designed to correct the mistake as to the description of the land. By the decree it is ordered, that the title of the said Susan Bow be divested, and vested in the said Daniel Saffarans, and that the plaintiff have execution for the same. There is nothing in the record to show that this decree has ever been executed. Supposing the court to have had jurisdiction of the subject-matter, and of the person of the defendant, the decree would be regarded until reversed, as a complete adjudication of Saffarans' equity, but nothing more. It cannot of itself invest him with the defendant's legal title. This can only be accomplished by the act of the party, or by a commissioner appointed for that purpose by the court. It is, however, manifest from the face of the bill, that Saffarans had no interest whatever in the subject-matter. Without an interest, it is impossible to conceive, upon what principle a court of equity could entertain jurisdiction. The test as to the jurisdiction is, whether he had such an equitable title to the land, as would induce a court of equity to lend its aid, in restraining the defendant from arraying against him her legal title. So far from showing an equitable title, which would be recognized as superior in a court of equity to the defendant's title, and which would induce that court to

interfere with such title, he shows conclusively that he never had even a shadow of right to subject the land to the payment of the note, as he holds it only as an assignee, and not as payee; the vendor's lien not being in its nature assignable, and not passing to the assignee.

If the plaintiff's right to recover depended alone upon the title thus shown, we would feel bound to reverse the judgment, and to grant a new trial.

But it is proved 'that the defendant entered into possession under the plaintiff, under a contract to purchase the land; that this contract was rescinded, and that money which was paid by defendant, refunded to him.

Their testimony, together with the admission, that the defendant was in possession at the commencement of the suit, was of itself sufficient to sustain the action, and all the objectionable testimony might with safety have been omitted.

The judgment of the court below will therefore be affirmed..